IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MICHELLE SANTOS, | § § | |
| Plaintiff, | § § | |
| v. | § § | 1:16-cv-440  RP |
| WINCOR NIXDORF, INC., and DANIELLE MATHEWS | § § § | |
| Defendants. | § § | |

# ORDER

Before the Court is Defendant Wincor Nixdorf, Inc.'s Motion to Compel Arbitration and Dismiss Proceedings (Dkt. 8), Plaintiff's response, and Defendant's reply. After reviewing these filings, the relevant law, and the record in the case, and after holding a hearing on Defendant's motion, the Court issues the following order.

## I. BACKGROUND

Plaintiff Michelle Santos filed the above-styled cause of action on April 6, 2016 bringing three employment claims against Defendants Wincor Nixdorf and two against Danielle Mathews, her direct supervisor at Wincor Nixdorf.

### A. Factual Allegations

First, Ms. Santos alleges that both Wincor Nixdorf and Ms. Mathews violated the Fair Labor Standards Act ("FLSA") by failing to provide her sufficient overtime pay. According to her complaint, Ms. Santos worked at Wincor Nixdorf from October 3, 2014 through March 10, 2015. While employed at Wincor Nixdorf, she was paid hourly, but was instructed by Ms. Mathews to not record more than 45 hours of work a week. In order to preserve her job, Ms. Santos followed Ms. Mathews' instructions and recorded about 45 hours of work a week even when she worked

1

additional hours. Ms. Santos also alleges that Ms. Mathews informed her that she would be recording that Ms. Santos took a required 30 minute lunch break each day, even though Ms. Santos regularly worked through lunch. Based on these allegations, Ms. Santos asserts claims under the FLSA for unpaid overtime against Wincor Nixdorf and Ms. Mathews.

Second, Ms. Santos alleges that Wincor Nixdorf and Ms. Mathews terminated her in retaliation for her complaints about working unpaid overtime, in violation of the FLSA. According to her complaint, Ms. Santos sent an email to Ms. Mathews in late February 2015 explaining that because she could not record more than 45 hours a work a week, she was forced to work unpaid overtime hours to get her required work done. Ms. Santos alleges that she was terminated in early March 2015 because of this complaint, in violation of the FLSA.

Third, Ms. Santos alleges that Wincor Nixdorf violated Title VII by terminating her due to pregnancy. Ms. Santos was pregnant during her employment with Wincor Nixdorf, and disclosed her pregnancy to Ms. Mathews in early November 2014. Ms. Santos had medical complications caused by the pregnancy, including gestational diabetes, and in late January 2015 provided Wincor Nixdorf with a doctor's note stating that she needed to work from home for the remainder of her pregnancy. Ms. Santos alleges that although Wincor Nixdorf allowed her to work from home, Ms. Mathews still asked her to work from the office three to four days a week. Ms. Santos did not, but alleges that she worked even harder than before to ensure that she was demonstrating her value to Wincor Nixdorf.

In January 2015, Ms. Santos also arranged a meeting with Ms. Mathews to discuss her delivery. Ms. Santos explained that she was scheduled for an induced labor on March 13, 2015 and asked if she could take one week off after having the baby, work from home for an additional month, and then return to her regular schedule. Ms. Mathews indicated this was fine. On March 10,

2015, three days before her scheduled delivery date, Ms. Santos was terminated from her employment with Wincor Nixdorf.

## B. Arbitration Agreement

On June 24, 2016, Wincor Nixdorf filed a motion to compel arbitration.[1] It is undisputed that Ms. Santos did not enter an arbitration agreement with Wincor Nixdorf. She did, however, sign an arbitration agreement with Staffmark Investments, LLC, the employment agency or staffing service that placed her at Wincor Nixdorf.[2] The arbitration agreement between Ms. Santos and Staffmark provides:

> You and Staffmark agree to use binding arbitration, instead of going to court, for any "covered claims" that arise between you and Staffmark and/or its current or former employees, managers and agents. "Covered claims" are any legal claims that you might bring against Staffmark or that Staffmark might bring against you that arise out of or relate to your employment with Staffmark, such as disputes concerning your recruitment, hire, pay, benefits, leaves of absence, accommodation for a disability, workplace treatment (e.g., claims for harassment, discrimination, or retaliation), or termination of employment.

(Defs.' Mot. to Compel Arb. Ex. A § 1; Dkt. 8.)

It was Staffmark that ultimately communicated to Ms. Santos that she was being terminated from her employment at Wincor Nixdorf. Further, after she was terminated, Ms. Santos filed complaints with the Equal Employment Opportunities Commission ("EEOC") against both Staffmark and Wincor Nixdorf for discrimination, and alleged in her complaint against Staffmark that Staffmark was "jointly" responsible for her discriminatory treatment by Wincor Nixdorf. (Defs.' Mot. to Compel Arb. Ex. B at 2; Dkt. 8.) After the EEOC issued Ms. Santos a right-to-sue notice for both complaints, Ms. Santos initiated an arbitration proceeding against Staffmark pursuant to her arbitration agreement with them. According to Ms. Santos's counsel, Ms. Santos has brought the

---

[1] According to Defense counsel, Ms. Mathews has not yet been served and thus did not join the motion.
[2] According to statements of counsel for both parties at the hearing, Ms. Santos did not enter an employment agreement with either Staffmark or Wincor Nixdorf; the only relevant agreement is the arbitration agreement with Staffmark.

same claims against Staffmark in the arbitration proceeding that she has brought against Wincor Nixdorf in this case, plus one additional claim.

Wincor Nixdorf argues that, under Texas law, Ms. Santos is equitably estopped from refusing to arbitrate her claims against it because those claims are sufficiently intertwined with the claims against Staffmark that are currently proceeding in arbitration. Ms. Santos responds that, to the extent Texas recognizes an "intertwined-claims" theory of equitable estoppel, it does not apply here, where Staffmark and Wincor Nixdorf are unaffiliated entities. Further, Plaintiff asserts that it is unclear whether Texas law even recognizes an intertwined-claims theory of equitable estoppel.

## II. ANALYSIS

Generally "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.'" *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)). However, "a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate based on . . . equitable estoppel if the relevant state contract law so permits." *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 261 (5th Cir. 2014) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009)).

Defendant relies on a 2007 Texas Supreme Court decision, *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185 (Tex. 2007), and lower court decisions citing it,[3] to support its assertion that Texas contract law recognizes an "intertwined-claims" theory of equitable estoppel. Under this theory, a signatory to a contract must arbitrate claims with a non-signatory "when [the] nonsignatory defendant has a 'close relationship' with one of the signatories and the claims are 'intimately founded in and intertwined with the underlying contract obligations.'" *In re Merrill Lynch*, 235 S.W.3d at 193–

---

[3] *See Cotton Commercial USA, Inc. v. Clear Creek Indep. Sch. Dist.*, 387 S.W.3d 99 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Hays v. HCA Holdings, Inc.*, No. A-15-CA-432-SS, 2015 WL 5737963 (W.D. Tex. Sept. 30, 2015), *appeal filed*, No. 15-51002 (5th Cir. Oct. 21, 2015).

94 (Tex. 2007). Plaintiff, however, questions whether Texas law recognizes the intertwined-claims theory of equitable estoppel. Before considering whether arbitration would be appropriate under the intertwined-claims theory of equitable estoppel, the Court will consider whether Texas law recognizes such a doctrine.

### A. Existence of Intertwined-Claims Estoppel Under Texas Law

Prior to 2009, many courts, including the Fifth Circuit, allowed "non-signatories to compel arbitration based on federal common law, rather than state contract law." *Crawford*, 748 F.3d at 261–62 (citing *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir. 2000) as an example of an opinion applying federal common law to compel arbitration). In *Arthur Andersen LLP v. Carlisle*, the Supreme Court clarified that it was state contract law, not federal common law, that should guide the analysis of whether a "a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate based on . . . equitable estoppel." *Crawford*, 748 F.3d at 261. The *Arthur Andersen* decision explained that while the Federal Arbitration Act "creates substantive federal law regarding the enforceability of arbitration agreements," such that courts "place such agreements upon the same footing as other contracts," it does not "purport[] to alter background principles of state contract law regarding the scope of agreements." 556 U.S. at 630. Thus, when applicable, "'traditional principles' of state law allow [an arbitration agreement] to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Id.* at 632; *see also Crawford*, 748 F.3d at 257.

Here, the parties do not dispute that state contract law, rather than federal common law, controls whether a non-signatory to an arbitration agreement can be bound by that agreement. It appears, however, that the Texas Supreme Court decision on which Defendant relies to argue that

5

the intertwined-claims theory of equitable estoppel exists under Texas law is discussing federal common law, *not* state contract law.

The decision, *In re Merrill Lynch*, was issued in 2007, roughly two years before *Arthur Andersen*. In it, the Texas Supreme Court recognized that it was still unclear whether state law or federal common law controlled the application of equitable estoppel to arbitration agreements. *In re Merrill Lynch,* 235 S.W.3d at 195. The court stated that "[u]ntil the United States Supreme Court clarifies . . . whether federal or state law governs the issue," of estoppel its "decision must remain somewhat tentative," but ultimately denyied a motion to compel arbitration where "nothing in Texas contract law, and no settled principles of federal arbitration law . . . require[d] the plaintiffs to arbitrate." *Id.* Thus, in determining whether to allow a non-signatory to invoke an arbitration agreement through an estoppel theory, the Texas Supreme Court considered both federal common law and state law. *Id.* at 191–95.

Importantly, however, the Texas Supreme Court's discussion of the intertwined-claims theory, on which Defendant relies, appears to be based solely on federal common law. Three parts of the opinion indicate this. First, when initially discussing its own prior application of estoppel to arbitration agreements, the Texas Supreme Court mentions only that it had "applied estoppel when nonsignatories [sought] a *direct benefit* from a contract with an arbitration clause." *Id.* at 191 (emphasis added). The "direct benefit" theory of estoppel is distinguishable from the intertwined-claims theory, and not at issue in this case.[4] Second, when the Texas Supreme Court later discusses the intertwined-claims theory, it notes that it has been applied by "federal circuit courts," and it cites *only* to federal circuit courts (primarily the Second Circuit) in explaining the theory. *Id.* at 193–94. Third,

---

[4] "Direct benefits estoppel," allows a nonsignatory to a contract be compelled to arbitration with a signatory (or vice versa) where their "claim seeks a direct benefit from a contract containing an arbitration clause." *In re Weekly Homes, L.P.*, 180 S.W.3d 127, 131–32 (Tex. 2005). Here, Plaintiff's claims are not seeking a benefit from a contract containing an arbitration clause.

6

when the Court turns to discuss whether state law might allow the enforcement of a contract against a nonsignatory in the case, it does not mention the intertwined-claims theory. *Id.* at 194.

Further, there is no indication that the Texas Supreme Court intended to adopt the intertwined-claims theory as part of state law when it discussed it in *In re Merrill Lynch*,[5] and Defendant identifies no other Texas Supreme Court case adopting the theory.[6] Thus, this Court is not convinced that Texas law recognizes that a nonsignatory to an arbitration agreement may compel a signatory to arbitrate a claim against it under an intertwined-claims theory of equitable estoppel.

Given, however, that the Texas Supreme Court has not clarified whether it would adopt the intertwined-claims theory of estoppel since the U.S. Supreme Court clarified that it is state law, not federal law, that governs the enforceability of arbitration agreements, the Court will consider whether, under that theory, Defendant's motion should be granted.

### B. Application of Intertwined-Claims Estoppel

Under the intertwined-claims theory of estoppel, plaintiffs may be estopped from avoiding arbitration with a nonsignatory where the "nonsignatory defendant has a 'close relationship' with one of the signatories and the claims are 'intimately founded in and intertwined with the underlying contract obligations.'" *In re Merrill Lynch*, 235 S.W.3d at 193–94 (quoting *Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995)). This "'close relationship' requirement has generally limited [the application of intertwined-claims estoppel] to instances of strategic pleading by a signatory who, in lieu of suing the other party for breach, instead sues that party's nonsignatory

---

[5] *Cf. Hays v. HCA Holdings, Inc.*, No. A-15-CA-432, 2015 WL 5737963 (W.D. Tex. Sept. 30, 2015) ("[T]he Texas Supreme Court . . . strongly implied 'intertwined-claims estoppel, at least where the nonsignatory defendant has a 'close relationship' with the signatory and the underlying contract, is a viable theory under Texas law.").

[6] One Texas Supreme Court decision issued prior to *In re Merrill Lynch* stated in dicta that Texas law recognized a slightly different version of the intertwined-claims theory, involving concerted misconduct, but the Texas Supreme Court in *In re Merrill Lynch* made clear that only "direct-benefits estoppel" was relevant to the earlier case. *See Glassell Producing Co., Inc. v. Jared Res.*, 422 S.W.3d 68, 82–84 (Tex. App.—Texarkana 2014, no pet.) (quoting *In re Merrill Lynch*, 235 S.W.3d at 191).

principals or agents for pulling the strings.'" *Id.* at 194. Thus, unlike some other theories of estoppel, it does not "sweep independent entities" into arbitration agreements. *Id.*

Defendant asserts that there is a close relationship between Staffmark and Wincor Nixdorf. It explains that "but for the relationship between the two entities, [Ms.] Santos would not have been assigned to work at Wincor [Nixdorf] and thus, Wincor [Nixdorf] would not have been subject to suit by Santos." (Def.'s Mot. to Compel Arb. at 5; Dkt. 8.) Defendant notes that Ms. Santos "was required to sign the arbitration agreement before her assignment to Wincor[ Nixdorf's] workplace." (Def.'s Reply at 4; Dkt. 10.) Defendant also asserts that Ms. Santos's claims against Wincor Nixdorf are based on the same factual allegations as those raised against Staffmark.

Ms. Santos strongly disagrees that Staffmark and Wincor Nixdorf have a close relationship. Instead, Ms. Santos argues, Wincor Nixdorf was simply a customer of Staffmark. Further, Ms. Santos asserts that while these were contemporaneous incidents, the claims are not intertwined.

While the Court disagrees with Ms. Santos that the claims here against Wincor Nixdorf are not factually intertwined with those against Staffmark, it agrees that there is not a close relationship between Wincor Nixdorf and Staffmark. Without this close relationship, Defendant cannot invoke the intertwined-claims theory of estoppel to compel Ms. Santos into arbitration.

Wincor Nixdorf is not a "principal[] or agent[]" of Staffmark. *See In re Merrill Lynch*, 235 S.W.3d at 194. Instead, it is a client or customer of Staffmark. In *In re Merrill Lynch*, the Texas Supreme Court noted in parenthetical the many types of relationships that other courts had identified as sufficiently close to allow the application of intertwined-claims estoppel. *Id.* at 194 n.40. These cases primarily involve a nonsignatory owner, parent company, or agent. *Id.* (citing cases involving "nonsignatory owners of [a] signatory franchisor, . . nonsignatory owners of subsidiary, . . . nonsignatory affiliate that acted as agent for signatory corporation, . . . nonsignatory affiliates and assignors of signatory corporations, . . . nonsignatory parent [of] subsidiary[], . . . [and]

nonsignatory surety [of] debtor[]"). The relationship here, between Wincor Nixdorf and Staffmark, is more tenuous than each of the relationships cited in *In re Merrill Lynch* as instances where a relationship was sufficiently close to allow application of intertwined claims estoppel. Wincor Nixdorf and Staffmark are not affiliates, but entirely separate entities. While Defendant's arguments demonstrate that both companies are closely related to Ms. Santos's employment claims, they do not show that the entities themselves are closely related.

Defendant argues, however, that this case is very similar to another recent case out of the Western District, and that under its reasoning this Court should compel arbitration. In *Hays v. HCA Holdings, Inc.*, a cardiologist who suffered from epilepsy and was ultimately terminated from his employment brought claims in state court against three entities, Austin Heart, PLLC, Capital Area Cardiology ("CAC"), and HCA Holdings, Inc. *Hays*, 2015 WL 5737963 at *2. The cardiologist had entered an employment agreement with Austin Heart and CAC that included a mandatory arbitration provision, but HCA Holdings was not a signatory to the agreement. *Id.* After the state court dismissed both Austin Heart and CAC so that the physician's claims against them could be arbitrated, HCA Holdings removed to federal court. *Id.* at *3. HCA Holdings and HCA Physician Services, a newly added defendant, then sought for the court to compel the physician to arbitrate the claims against them under the direct-benefits and intertwined-claims theories of equitable estoppel. *Id.*

Of the four claims brought by the cardiologist against the two remaining defendants, (1) violation of the TCHRA,[7] (2) negligence, (3) breach of contract,[8] and (4) "tortious interference with at-will employment," the court first determined that direct-benefits estoppel applied only to the fourth claim. *Id.* at *6. It went on to hold that the cardiologist was precluded from litigating the

---

[7] Texas Commission on Human Rights Act
[8] The alleged breach related to the HCA Code of Conduct, not the physician's employment agreement. *Hays*, 2015 WL 5737963 at *6.

other three claims under the intertwined-claims theory of equitable estoppel. *Id.* at \*7–9. The Court found that the plaintiff "treat[ed] Austin Heart, CAC, and Defendants as a single unit in its pleadings," and "raise[d] virtually indistinguishable factual allegations against Defendants, Austin Heart, and CAC." *Id.* at \*8. It concluded that,

> "[B]y failing to differentiate his factual allegations against Defendants from those against Austin Heart and CAC—all of which are affiliates connected to [the physician's] former cardiology practice—[the physician] has treated all of those entities as closely related but engaged in creative or strategic pleading to avoid the arbitral form."

*Id.*

There are two important differences between this case and *Hays*. First, and most importantly, the defendants in *Hays* and the entities with whom the physician had agreed to arbitrate his claims were "affiliates"—meaning that they were related entities under common control. *See* Black's Law Dictionary (10th ed. 2014), affiliate ("A corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation."). Thus, the nonsignatory defendants in *Hays* had the close relationship with the signatories that Defendant here lacks with Staffmark. Second, the close relationship between the signatories and nonsignatory defendants in *Hays* was demonstrated by the pleadings, which treated the entities as a single unit or as interchangeable. In contrast, here, Ms. Santos has made very specific allegations with respect to Wincor Nixdorf's actions, and in particular, those actions of her supervisor at Wincor Nixdorf. While these allegations are also relevant to her claims against Staffmark, she could not make the exact same allegations against Staffmark, for example, by lumping it at all times with Wincor Nixdorf or simply switching out the name of Staffmark for Wincor Nixdorf. Thus, Ms. Santos has not engaged in the kind of strategic pleading, present in *Hays*, that is designed to avoid arbitration. *See In re Merrill Lynch*, 235 S.W.3d at 194 ("But the 'close relationship' requirement has generally limited this exception to instances of strategic pleading by a signatory

10

who, in lieu of suing the other party for breach, instead sues that party's nonsignatory principals or agents for pulling the strings.").[9]

Finally, Defendant's counsel, at the hearing urged this Court to grant its motion to compel arbitration because Wincor Nixdorf would likely be drawn into an arbitration proceeding. Notably, the Texas Supreme Court in *In re Merrill Lynch* outlined the reasons this argument must be rejected. It explained that "arbitration 'is a matter of consent, not coercion,'" and that the Federal Arbitration Act "'does not require parties to arbitrate when they have not agreed to do so.'" *Id.* at 192 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) and *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002)). Thus, a party who has not agreed to arbitrate its claims cannot be compelled to arbitration, even where "two claims arise from the same transaction," and there are allegations of "substantially interdependent and joint misconduct." *Id.* Instead, "federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement." *Id* at 192 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983)). "[C]onsiderations of efficiency and convenience," like those mentioned by Defendant, "cannot override" the absence of an arbitration agreement between parties. *Id* at 192 (citing *Moses*, 460 U.S. at 20).

### III. CONCLUSION

For the aforementioned reasons, this Court **DENIES** Defendant Wincor Nixdorf's motion to compel arbitration (Dkt. 8).

**SIGNED** on August 19, 2016.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[9] Defense counsel's concession at the hearing that if there was no arbitration pending against Staffmark, Wincor Nixdorf would be required to try the case in court further supports this conclusion. If Ms. Santos was really just strategically avoiding litigation by suing an entity closely related to Staffmark, and intertwined-claims estoppel was applicable here, it seems that she could not simply avoid arbitration by not bringing claims against Staffmark.